WILLIAM A. BROWN AND ALS. *versus* NATHAN H. ALLEN.

An exception in a deed must be a portion of the thing granted, or described as granted, and which would otherwise pass by the deed.

Where a tract of land is granted in clear and unmistakable terms, the grantor, and those claiming under him, are estopped to say in a court of law, that the land thus described in the deed was inserted by mistake, and parol evidence is inadmissible to show that another piece of land was intended to be conveyed.

EXCEPTIONS were taken to the rulings of APPLETON, J., who tried the cause at *Nisi Prius.*

This is a writ of entry, to recover a part of the north half of lot No. 13, range 1, in Stetson. Plea, "Nul disseizin."

The demandant claimed title under a levy on the premises as the property of William O. Colbath, made February 15, 1855, and subject to objection. Writ in this action dated March 5, 1856. The demandant introduced a warrantee deed of the north half of lot No. 13, range 1, from Bartlett Leathers to said Colbath, dated December 16, 1836, and duly recorded. The land is described in said case as "the north half of lot No. 13, range 1, in Stetson," and it was admitted that, by said deed, said Colbath acquired the title to said land. The demandant also introduced a record of the judgment against Colbath, and rested his case.

In defence, the tenant introduced, subject to all legal objections, a warrantee deed from one Walsh to Bartlett Leathers, of the whole of lot No. 13, range 1, in Stetson, dated March 10, 1856, duly recorded. Deed William O. Colbath to Joseph Leathers, dated March 7, 1837, of a part of the north half of lot No. 13, range 1, in Stetson. The language is as follows: "Part of lot No. 13, range 1, in said town, viz: twenty-five arces, taken from the north end of said lot, by a line running east and west through said lot, parallel with the north line, so far south from said north line as to contain twenty-five acres."

The demandant did not claim the land embraced in this

deed to Leathers, but he did claim to recover all the north part of lot No. 13, range 1, not embraced in this deed. The tenant also offered deed of William O. Colbath and Henry H. Colbath to James Colbath, dated November 5, 1840, duly recorded, of a parcel of land, situate in said Stetson, described as follows: " A part of lot No. 13, range 1, it being a part of the south half of said lot, and all of said half lot, except so much of said half lot as is deeded from William O. Colbath to Joseph Leathers, containing twenty-five acres, more or less. The demandant objected to the introduction of said deed, as irrelevant to the issue between the parties.

The objection was overruled *pro forma,* and the deed admitted. The tenant then introduced the conveyances, subject to the same objection by the demandant, connecting himself with the title under the last mentioned deed. And for the purposes of this trial, the court instructed the jury that the defence was made out, and that they should return a verdict for the tenant, which was done.

The plaintiff objected to any parol testimony to affect the deeds in any manner, or show a mistake in the language of the deeds. The court overruled the objection and admitted the parol testimony, below recited.

Joseph Leathers testified, that he owned, and was in possession of, the north end of lot No. 13, range 1, in Stetson, at the time the Colbaths, William O. and Henry H., conveyed to James Colbath, that he never owned any part of the south half of No. 13, range 1, and that he never knew that William O. or Henry H. ever claimed any part of the south half of No. 13. That James Colbath occupied the south part of the north half of said lot, after the conveyance from William O. and H. H. to him, until he conveyed it to Spaulding.

Henry Hill testified, that he made the deed signed by William O. and Henry H. Colbath, dated November 5, 1840. That at the time he made that deed William O. Colbath was in possession of the south part of the north half of No. 13, range 1. That he never knew that William O. Colbath

claimed or owned any part of the south half of No. 13, range 1. The whole lot, No. 13, range 1, contained one hundred acres.

The jury were instructed, however, to pass upon the question of betterments in the case, for which a claim was made by the tenant under the statute, so that if the foregoing rulings were wrong the whole case might be finally disposed of by the full court upon these exceptions. The finding of the jury, in answer to the questions proposed to them upon the subject of betterments, make a part of the case, and if the full court are of opinion that the demandant is entitled to recover, final judgment is to be entered upon those findings in accordance with the law of the case. The deeds, levy, and judgment on which levy is made, are referred to.

To the foregoing rulings and instructions the demandant excepted.

*L. Barker,* counsel for the demandant.

It is not in dispute that William O. Colbath was originally sole owner of the "*north half of lot No.* 13, *R.* 1, *in Stetson.*"

The demandant, by his levy, has succeeded to that title, and is entitled to recover possession of the demanded premises, unless it was conveyed by the deed of November 5, 1840, from William O. and Henry H. Colbath to James Colbath, Jr. Upon the legal effect of that deed the rights of the parties depend.

It will be noticed at the first, that Henry H. Colbath had no interest in the north half, at the date of the deed, and has never pretended to have, so that if, as the tenant contends, the deed conveys the north half, we find Henry H. giving a warrantee deed of property which he never professed to own, and in whom the records show no title.

The language in the deed is as follows: "A part of lot No. 13, R. 1, it being a part of the south half of said lot, and all of said half lot, except so much of said half lot as is deeded from William O. Colbath to Joseph Leathers." The ten-

ant connects himself with the title under that deed, and claims to have it cover the demanded premises. By the deed of William O. Colbath to Joseph Leathers, dated March 7, 1837, it appears that a part of the north half had been conveyed, and the demandant only claims to hold the balance under his levy.

If the word south could be stricken from the deed to James Colbath, and the word north inserted, it would be a perfect description of the demanded premises. In no other way, and by no other means, can the deed be made to apply to them. As it reads, there is no allusion to the north half —nothing said about the north half, and no word or sentence that would lead a creditor of William O. Colbath on examining the records, to suppose that he had conveyed or intended to convey the north half, and especially after tracing the sole title to the north half into him, on finding an entire stranger to that title joining in the conveyance, and that conveyance a warranty.

The object of the parol testimony objected to, and admitted, was to show that the north half, or a part of it, was intended to be conveyed by that deed.

The rules of law applicable to conveyances of real estate, are so few and simple, that it would seem there could be no difficulty in applying them to this case.

Parol testimony can be introduced for the purpose of affecting deeds in two cases only: first, where there is a latent ambiguity; and second, where the description is false.

A latent ambiguity arises when taking the language of the deed, just as it reads, it will apply equally well to two objects, and in that case parol testimony is admissible to show which was intended by the grantor, as if a deed be made to John Jones, of Bangor, and there be two John Jones's.

It may also be introduced to show that part of the description is false or impossible, and if proved so, such false part is rejected as surplusage, when, if the remaining part of the description is sufficient to operate as a conveyance, the por-

tion retained is conveyed, otherwise the deed is inoperative and void.

No principle of law is better settled than that parol evidence is inadmissible to add to, contradict, or vary the language of the deed, or for any other than the purposes above named. Vose v. Handy, 2 Greenl., 322; Child v. Wells, 13 Pick., 124; Pride v. Lunt, 19 Maine R., 115; Wing v. Burgess, 13 Maine R., 111.

. It is equally well settled that in an action at law parol evidence is inadmissible to show that the parties *intended* to convey one parcel of land, when, in fact, the deed conveyed another. This would contradict the deed. Lincoln v. Avery, 1 Fairf., 418.

Some part of the description may be false, or two descriptions of the same premises in the same deed may be given, one of which may be false, and will therefore be rejected, and enough still remain to constitute a valid conveyance. Abbott v. Pike, 33 Maine R., 204 and 207.

Still this does not contradict the deed, because it leaves all that is really true to operate as a deed, without being affected by parol evidence. The parol evidence is only admissible to show what is false in the description, and which is therefore to be rejected, and enough must still remain to constitute a valid deed.

Parol testimony is wholly inadmissible to show a mistake in describing the premises, except in some item of boundary, as already stated, and which may therefore be rejected. It cannot be received to show that some word was inadvertently, or by mistake, used by the scrivener or party who drew the deed, and therefore the premises intended to be conveyed by the parties were not conveyed, unless the parol evidence is receivable to correct the mistake. Lincoln v. Avery, 1 Fairf., 418; Locke v. Whiting, 10 Pick., 278; Bell v. Morse, 6 N. H., 205; Linscott v. Fernald, 5 Greenl., 496.

Now it is respectfully contended, that, upon these general principles, the testimony objected to is clearly inadmissible

in this case. The deed undertakes to convey the south half. The testimony goes to show that the grantors owned no part of the south half, but were in possession of the north half, and that they intended to convey the north half.

It is not offered to explain a latent ambiguity, for there is none on the face of the deed. As it reads, it can apply to but one object.

It is not offered to show a false description of the premises, with the view of having such false descriptions rejected, for what is there false in the description? No item of boundary is wrong, because none is given. The lot and range are properly described, and if they were not they could not be rejected, because no other description is given. There is only one description—every part of it is essetial.

It does not come within that class of cases where a part of the description can be rejected. What part is false, and which part is true?

If what the tenant contends is true, it is a case of mistake, which cannot be corrected in a court of law. The word north should have been used instead of south, and then the intention of the parties would have been carried into effect. But if the grantor made a mistake, it is not the fault of his creditors, who entrusted him with their property, upon the strength of his record title to this property. If he intended to convey the north half of the lot, or any part of the north half, by his deed of November 5, 1840, he has certainly entirely failed to do so. There is no allusion in it to the north half.

The allusion to the deed of William O. to Joseph Leathers does not help the matter. 10 Met., 250; 8 Cush., 418; 19 Pick., 253. No date is given of the deed referred to, nor any reference to any volume or page in the registry where it may be found. An inference, and only that, may be drawn, that some portion of the south half may at some time have been conveyed to Joseph Leathers. If so, the grantee would take the remainder; if not, then the deed would cover the whole south half. But what the grantee took, or

did not take, by that deed, is no concern of ours, so long as it does not convey the north half, nor undertake to do so. If the tenant is permitted to establish his title to the north half by this parol evidence, instead of by his deed or some instrument in writing, he may hold any other premises to which he may please to assert title, by evidence of the same grade, directly in the teeth of the statutes directing the mode of transferring real estate by deed, chap. 36, and " to prevent frauds and perjuries," chap. 53.

As was well said by PARRIS, J., in Lincoln v. Avery, 1 Fairf., 418, which is entirely decisive of this case, " the admission of this evidence to explain and vary the deed, and establish title, would shake the security of all the real property in the state, and overturn one of the soundest principles of evidence."

G. W. Ingersoll, counsel for the tenant.

In the deed from W. O. and H. H. Colbath to J. Colbath, the first part of the description does not agree with the last. The half lot, part of which was deeded to Joseph Leathers, was in fact the *north* half, not the *south* half, as mentioned in the deed. Here is a *latent ambiguity*. The question is, which part of the description shall stand? Parol evidence is admissible, to a certain extent, to explain a latent ambiguity. Linscott v. Fernald, 5 Greenl., 496.

The question, in other words, is simply this, what was the *intention* of the parties? That intention is to be gathered from the deed itself, and from other evidence admissible by the rules of law.

1. The quantity of the land conveyed, *twenty-five acres*, agrees with the construction contended for by the defendant, and it is not certain that it would agree with plaintiff's construction, even provided Joseph Leathers had owned a portion of the south half. Thatcher v. Howland, 2 Met., 41.

2. W. O. and H. H. Colbath never owned any portion of the south half. Would they be likely to undertake to convey a *part* of a lot which they did *not own*, as a part which

they did own? Thatcher v. Howland, 2 Met., 44, 45. The court will look at the history of the title. Jameson v. Balmer, 20 Maine R., 425.

3. W. O. Colbath, previously to his deed to James Colbath, occupied this portion of the north half. After his conveyance to James, James occupied this portion. None of the Colbaths ever owned or occupied any of the south half. The parties to the deed gave, by their acts, the construction to the deed contended for by defendant, and that construction was *acquiesced in for fifteen years*, and never disputed by any one till plaintiff's levy, February 15, 1855, fifteen years after the conveyance.

There is no extraneous fact to support the plaintiff's construction.

The question then is this, do not the facts above stated show that it was the *intention* of the parties, W. O. and H. H. Colbath, to convey the land in dispute, and was it not equally the intention of James Colbath to take a conveyance of that land? It would seem that no proposition could be plainer.

The testimony of Joseph Leathers and Henry Hill, showing only the acts and situation of the parties, in order to explain a latent ambiguity, are clearly admissible. Linscott v. Fernald, before cited.

In cases of doubtful construction, the construction given by the parties is deemed the true one. Stone v. Clark, 1 Met., 378; Haven v. Brown, 7 Greenl., 421.

"What is most material and most certain shall control what is less material and less certain." Loring v. Norton, 8 Greenl., 68. The defendant's construction, aided by the parol evidence, is most certain.

The courts will uphold conveyances, if possible; will reject what is false in the description, if what remains, together with admissible parol evidence, will show the intention of the parties. Wing v. Burgis, 13 Maine R., 111; Vose v. Handy, 2 Greenl., 322; Worthington v. Hybyer, 4 Mass., 196.

It is a familiar principle, that if parties, *after* the convey-

ance, erect monuments, the monuments control the description. This is the act of the parties, showing their intention. Dunn v. Hayes, 21 Maine R., 76.

It is proper for the court to look at the history of the conveyance, to ascertain the situation of parties, and thence their intention. Jameson v. Balmer, 20 Maine R., 425.

RICE, J. The parties claim title under the same original grantor. The only question in controversy between them, is, whether William O. Colbath had any legal title to the north half of lot No. 13, range 1, in Stetson, at the time of the levy upon it as his property. It is conceded that said Colbath acquired a good title to said north half, by deed, dated December 16, 1836. A deed from him to Joseph Leathers, of twenty-five acres, taken from the north end of said north half, dated March 7, 1847, was introduced, subject to objection.

To show that at the time of the levy against William O. Colbath, he had parted with all his interest therein, and therefore nothing passed by the levy, the defendant read, subject to objection, a deed from William O. Colbath and Henry H. Colbath, dated November 5, 1840, and recorded, of a parcel of land situated in said Stetson, described as follows: "A part of lot No. 13, range 1, it being a part of the south half of said lot, and all of said half lot, except so much of said half lot as is deeded from William Colbath to Joseph Leathers."

Leathers was permitted to testify that he did not own any part of the south half of No. 13. There was also testimony that November 5, 1840, W. O. Colbath was in possession of the south part of the north half, and that he was not known to have possession of any part of the south half of No. 13.

The description in the deed of November 5, 1840, is distinct and clear. There is no ambiguity upon its face, nor is there any apparent repugnancy in its terms. It is contended that the exception in this deed, taken in connection with the testimony, shows not only a latent ambiguity, but that the

description of the land by number is inconsistent with the whole deed, and should be rejected as false.

As already remarked, the alleged repugnancy arises from the exception in the grant. All the south half is conveyed, *except,* &c.

An exception in a deed must be a portion of the thing granted, or described as granted, and can be nothing else. Craig v. Wells, 1 Kernan, N. Y., 315.

In Bell v. Morse, 6 N. H., 206, the land demanded had been conveyed in distinct terms of description, but the deed contained an exception of " thirty feet in front, on the north corner, to run parallel with the line of my garden fence, to the eastern line of the lot I bought of Joshua Howard." It was proved by parol, subject to objection, that the land described in the exception was no part of the land conveyed, as described in the deed, but was part of another lot, which it was contended the grantor intended to convey. There were other facts, similar in character to those in the case at bar, tending to show a mistake in the description in the deed.

The court, in their opinion, say: But there are circumstances in this case which certainly render it not improbable that the land intended to be conveyed by that deed was in fact the forty acres.

One of these circumstances is the fact that a part of the forty acres, which was actually staked out by the parties at the time, is excepted in that deed. Every one must at once perceive, that an exception, to have any effect, must be a part of that which would otherwise pass by the deed, and that when one thing only is granted, to except another thing from the operation of the grant must be idle and nugatory.

There must be a grant before there can be anything for the exception to rest upon. Strike out the description, by number, in this case, and the exception falls with it, and nothing would pass by the deed. Thus the exception, being part of the thing granted, cannot be repugnant to the grant.

In Lincoln v. Avery, 1 Fairf., 418, it was held that parol

evidence is inadmissible to show that in writing a deed the scrivener, by mistake, inserted the words, *"the north half,"* immediately preceding the number of the lot. That case is in point, and well sustained by authorities.

Where a tract of land is granted in clear and unmistakable terms, the grantor and those claiming under him are estopped to say in a court of law, that the land thus described in the deed, was inserted by mistake, and that another piece of land was intended.

Such mistakes or errors can be corrected, if at all, only in a court of equity. Bell v. Morse, 6 N. H., 205; Barnes v. Leonard, 10 Mass., 459.

The parol evidence was improperly admitted. The exceptions are therefore sustained. But the verdict may be amended, and judgment entered, according to the agreement of the parties.